Daniel Wright, Esq. Wright Baker, P.A.
130-C North College Fayetteville, Arkansas 72701
Dear Mr. Wright:
You have requested approval, pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq.
(Repl. 2002 and Supp. 2009) (the "Act"), of a proposed agreement between the City of Greenland, Arkansas and the City of West Fork, Arkansas, captioned "Interlocal Mutual Aid Agreement" (the "Agreement"). You have submitted a copy of the Agreement, under the terms of which the parties agree to cooperate through their respective certified law enforcement agents in the enforcement of the law in their respective jurisdictions. I am required to review the Agreement for the purpose of determining whether it is in proper form and otherwise compatible with Arkansas law. A.C.A. § 25-20-104(f)(1) (Supp. 2009).
The Act authorizes agreements for joint or cooperative action between or among "public agencies" — a term statutorily defined as including any "[p]olitical subdivision of this state." A.C.A. § 25-20-103(1)(B) (Supp. 2009). With respect to the range of permissible agreements under the Act, A.C.A. § 25-20-104(a) (Supp. 2009) provides in pertinent part:
 Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law. . . . *Page 2 
(Emphasis added.) In my opinion, this grant of authority would include an agreement between two political subdivisions such as Greenwood and West Fork to cooperate in law enforcement.
With respect to the formal requirements specified by law, A.C.A. § 25-20-104 (Supp. 2009) provides in pertinent part:
 (c) Any agreement for joint or cooperative action shall specify the following:
 (1) Its duration;
 (2) The precise organization, composition, and nature of any separate legal or administrative entity created thereby, together with the powers delegated to it, provided that the entity may be legally created;
 (3) Its purposes;
 (4) The manner of financing the joint or cooperative undertaking and of establishing and maintaining a budget therefor;
 (5) The permissible methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon the partial or complete termination; and
 (6) Any other necessary and proper matters.
 (d) In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, in addition to the items enumerated in subdivisions (c)(1) and (c)(3)-(6) of this section, the agreement shall contain the following:
 (1) Provisions for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public *Page 3 
agencies party to the agreement shall be represented; and
 (2) The manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking.
Having reviewed the Agreement, I have concluded that it fails to meet two of the formal requirements set forth above. First, it establishes neither a separate legal entity, an administrator nor a joint board responsible for administering on an ongoing basis the joint or cooperative undertaking. Sections 3 and 4 of the Agreement do specify that the respective police chiefs or their designees will "hereafter coordinate certain shift responsibilities" of departmental officers. However, I do not consider this to entail ongoing administrative oversight of the joint project as mandated in the Act. Section 6 further specifies that the police chiefs of the two jurisdictions "will attempt to standardize the call priority criteria in their respective Standard Operating Procedures." However, again, I do not consider this provision as establishing an ongoing, authoritative oversight of the sort contemplated in the Act. This same conclusion applies to section 15 of the Agreement, which provides that the police chief and one or more board members of both jurisdictions will meet "at least biannually" in order "to review and evaluate the effectiveness of this Mutual Aid Agreement in accomplishing the goals hereinabove set forth and forecasting continued benefits of maintaining the Mutual Aid Agreement." I do not believe this "review" authority rises to the level of administrative control envisioned in the Act.
Secondly, the Agreement fails to detail the "manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking." Section 10 does indicate that either city "may acquire and maintain BAC or similar facilities, [or] use of the BAC facilities and equipment at the Washington County Sheriff is acceptable." It is unclear on the face of the Agreement whether "BAC facilities and equipment" comprise the sole property required in the joint undertaking or, for that matter, how decisions regarding the acquisition and, possibly, the disposition of such facilities is to be made. The Agreement should detail just what property, if any, might be acquired in furtherance of the joint undertaking and how the acquisition, use and disposition of such property will be accomplished. *Page 4 
I must in addition note one substantive matter that could become a point of concern. Under the terms of the Agreement, certified police officers of each of the two political subdivisions are to be "sworn in" to "dispatch responsibilities" in the other jurisdiction — a charge that will apparently involve the power of arrest. Although state law affords such authority to certified law enforcement officers, A.C.A. § 16-81-106(b) (Supp. 2009), the Code further provides that a law enforcement officer may make an arrest outside his jurisdiction only at the request of the municipal or county law enforcement officer having jurisdiction and only then if the arresting officer's employer has a written policy on file "regulating the actions of its employees relevant to law enforcement activities outside its jurisdiction." A.C.A. §§ 16-81-106(c)(3) and-106(c)(4) (Supp. 2009). In order for the Agreement to be effective, each of the law-enforcement parties to the Agreement would need to comply with these conditions.
Although I consequently cannot certify the Agreement as submitted, should you correct these deficiencies and resubmit your request, I would be inclined to certify the Compact as consistent with Arkansas law and formally in compliance with the Act. However, pursuant to the provisions of A.C.A. § 25-20-104(f)(2) (Supp. 2009), I must withhold approval of the proposed agreement in its current form.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JHD/cyh *Page 1